### RESTORATION OF MONEY TO INSOLVENT AFTER ASSIGNMENT.

Circuit Court of Richland County.

M. J. FRIEDMAN ET AL V. ADAM MITZ ET AL.

Decided, January, 1909.

*Debtor and Creditor—Fraudulent Transfer of Money in Contemplation of Assignment—Money Restored to Assignor After Assignment— Action by Creditors for an Accounting.*

One who with knowledge of the insolvency of another and his contemplated general assignment for the benefit of creditors, receives from the insolvent a large sum of money and gives due bills therefor, holds the money in trust for the creditors, and can not absolve himself from liability therefor to the creditors by returning the money to the insolvent personally after the assignment has been made, especially where there was no disclosure to the assignee of such restoration.

*Cummings, McBride & Wolfe,* for the plaintiffs.
*Douglass & Mengert,* contra.

TAGGART, J.; DONAHUE, J., and SHIELDS, J., concur.

Appeal from the Common Pleas Court of Richland County.

The plaintiffs, a partnership, brought suit against Adam Mitz and Michael Saunders, alleging that shortly before August 27, 1904, the said Mitz, in contemplation of insolvency, and with the

intent to delay, hinder and defraud the plaintiffs and other credi-
tors, secretly and fraudulently transferred to defendant, Mi-
chael Saunders, $3,800 in money; that, at the time of said
transfer and assignment, Saunders had full knowledge of the
insolvency of said Mitz and full knowledge of the purpose
of said assignment; and that said Saunders, in furtherance
of said fraudulent design, and for the purpose of defrauding
the creditors of said Mitz out of said money and property,
accepted said money. That, shortly thereafter, on August 27,
Mitz executed and delivered to one Mr. Marquis his deed of
assignment conveying all of his property to be administered
by said Marquis for and on behalf of his creditors. Said
deed was duly filed in the probate court and the assignee duly
qualified, but, on account of said fraudulent transfer, none
of the said money ever came into the hands of the assignee
and was not administered for the benefit of the creditors.
That, in the administration of said trust, there was applied to
the payment of plaintiff's claim $44.95 and no more; and that
they made a demand in writing on said Marquis, as said assignee,
to recover said property so fraudulently conveyed, and that said
Marquis has failed and neglected so to do. They pray that
the transfer of said money from Mitz to Saunders be declared
void, as against the creditors of Mitz, and that a trustee be ap-
pointed to administer that property to the equal benefit of all
creditors and for other relief.

To this petition the defendant, Saunders, filed his answer. In
the second paragraph of his answer he admits that Mitz, some
time before the assignment, placed in his hands $3,800 in money.
The dates of the payments are set out and are between August
10, 1904, and August 27, 1904. He further alleges that, at the
time he received this money, he delivered to Mitz due bills and
sets forth copies of the due bills. In the third paragraph of the
answer he says that on October 24, 1904, Adam Mitz demanded
said money and it was turned over to him on said date, and that
he has not since had any of said money; that, while he had said
money in his possession, he did use some of it in his business,
but that on demand the whole amount of it was repaid to Mitz
on October 24, 1904.

It thus appears from the pleadings and the admitted facts in this case that Saunders, with the knowledge that Mitz was insolvent and contemplated a general assignment for the benefit of his creditors, received from Mitz, shortly prior to August 27, 1904, $3,800; that, on August 27, Mitz made a general assignment of all his property for the benefit of all his creditors; that thereafter, about October 24, Saunders claims he returned this money to Mitz, he then knowing that the assignment had been made. It is admitted in this case that the plaintiffs are a partnership and that they are creditors of Mitz.

Upon this state of facts, it is contended, although the original payments by Mitz to Saunders were made with the knowledge of insolvency, and that Mitz contemplated an assignment, that Saunders is absolved, if the proof establishes the fact that he has paid the money over to Mitz on demand. With this contention we are not in accord.

When Mitz made an assignment to Marquis, he transferred all of his property to Marquis, he assigned his personal property and conveyed his real estate. The property ceased to be the property of Mitz; he ceased to be the owner thereof. It was then the property of Marquis, as trustee for the benefit of his creditors. Marquis was the trustee, the creditors were the *cestui que trust*. This money became impressed with this same character as much as any other personal property. Therefore, if this fraudulent transferee desired to purge himself from any personal responsibility or to secure immunity from accounting for the same, it became his duty to return it to the *person or persons entitled thereto*. He had no right or authority to transfer it or return it to Mitz, because Mitz was not entitled to receive it and the payment or return to him would not absolve Saunders from liability.

This is the holding in *Swift* v. *Holdridge,* 10 Ohio, 230, 231. Judge Lane, speaking for the court, says:

"An honest man will not take a fraudulent conveyance. If a man holds property fraudulently conveyed, as soon as he comes to a sense of his moral duty, *he will restore it to those to whom it belongs;* he ought to give it back to him from whom he received it, that it may be applied to his debts if wanted, or to his benefit

if not necessary for this purpose. The law, to discourage frauds, does not compel him to restore it to the fraudulent grantor, yet no man will retain it for a moment who desires the reputation of honesty or possesses a sense of justice."

It appears from the testimony in this case that Saunders not only did return it to the fraudulent grantor or transferrer, but he remained quiet, made no disclosure to the assignee in trust for the benefit of his creditors. In our opinion, after the assignment was made, he had no right whatever to turn this money back to Mitz.

It is objected that proof of repayment ought not to have been admitted, but we think that that does not absolve Saunders, and his statement that he gave it back to Mitz only gives color and force to the conclusion that this disposition of the money was a cunningly devised scheme to cheat and defraud the creditors, and if that is to meet the approval of a court of justice, then we have discovered a new and sufficient way to commit a fraud and receive the sanction of a court of equity.

Let us suppose that Mitz had died, and Saunders, attempting to absolve himself from personal responsibility had sought to restore the property to whom it belonged, the only person to whom he could have returned the property would have been the administrator of Mitz, in which event it would have been applied to the payment of Mitz's debts. As we have said, when the assignment was made, there was a trust imposed upon this property, and we think the statement in *Robertson* v. *Desmond*, 62 Ohio St., 487, 498, has peculiar application:

"The trust imposed upon the property remained unimpaired; and also the right of any one of them [referring to creditors] to commence a suit in the proper court, making necessary parties, to have the character of the transfer ascertained and determined, and a trustee appointed to administer the trust. Whether Robertson retained the property or not in no way impaired this right. If he had retained the property or disposed of it, other than by restoring it to Roth, a different case would have arisen. In such a case he might as well have been required to account for it at its value. This is fairly deducible from accurate principles as well as from the following cases:   *   *   *   That these cases relate to instances where there had been a fraudulent convenyance

does not affect the principle upon which they proceed. So far as moral turpitude is concerned, there is little or no difference between one who takes a conveyance in fraud of creditors and one who takes a conveyance of trust for the benefit of one or more creditors.''

Therefore, we think this transfer of this property should be declared to be a fraud on the rights of creditors, made with the intent to hinder, delay and defraud them and, as the proof does not show that there was a restoration on the part of Saunders to the parties entitled thereto, he should be held responsible and to account for the same.

The judgment and decree of the court may be entered in accordance with this opinion.